IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| TAO AN, CHUNGANG GUAN, CUI QINGYUN, HUIMIN LIN, BEILE LI, YANMING WANG, TAO ZHENG, ZHENG HU YUAN CAO, LINWAN FENG, | ) ) ) ) ) ) | Case No. 1:22-CV-10060 |
| Plaintiffs, v. | ) ) ) | Judge Andrew L. Carter, Jr. |
| WEIJIAN SHAN, BO LEILEI SHAN, | ) ) ) ) | |
| Defendants. | ) ) | |

**PLAINTIFFS' MEMORANDUM IN RESPONSE TO
DEFENDANTS'APPLICATION FOR FEES AND COSTS**

### INTRODUCTION

The Defendants' counsel has submitted a claim for legal fees corresponding to its claim for sanctions pursuant to Rule 11. Defendants' Counsel request an amount that is simply outrageous. Considering the limited amount of work that was necessary in this case (two motions -- one to dismiss and the other for Rule 11 sanctions -- both of which they averred were forgone conclusions in their favor) the amount being claimed is so excessive that it is an embarrassment and certainly is not legally warranted.

If the relief they sought in their motions was so obviously warranted to be in their favor, as they argued, it simply should not have taken in nearly $350,000 in legal fees to accomplish.

The rates applied are also unreasonable, the number of attorneys was excessive, and the amount of hours spent were excessive. If the Court is to award any fees, it is respectfully requested that the amount be reasonable, as is required by controlling law. The amount sought by Defendants here is clearly not reasonable, suitable or even justifiable and as such cannot serve as a legally sufficient basis upon which to calculate any award.

## CASE LAW ON LEGAL FEE AWARD CALCULATION

Courts have discretion to determine the amount of attorney's fees appropriate to satisfy a fee award. *Hensley v. Eckerhart*, 461 U.S. 424, 437, 103 S. Ct. 1933, 76 L. Ed. 2d 40 (1983). The Second Circuit has directed that, in determining appropriate fees, district courts set a <u>reasonable hourly rate</u>, bearing in mind all the case-specific variables the Second Circuit and other courts have identified as relevant to the reasonableness of attorney's fees, and then use the reasonable hourly rate. *Hensley v. Eckerhart*, 461 U.S. 424, 433, 103 S. Ct. 1933, 76 L. Ed. 2d 40 (1983).

The presumptively reasonable fee is "<u>the rate a paying client would be willing to pay</u>," <u>bearing in mind "that a reasonable, paying client wishes to spend the minimum necessary to litigate the case effectively</u>." *Arbor Hill*, 522 F.3d at 190. A "reasonable hourly rate," in turn, is "the rate a paying client would be willing to pay," taking into account, "among others," (i) "the time and labor required," (ii) "the amount involved in the case and the results obtained," and (iii) "the experience, reputation, and ability of the attorneys." *Arbor Hill*, 522 F.3d at 190, 187 n. 3.

"The most critical factor in a district court's determination of what constitutes reasonable attorneys' fees 'is the degree of success obtained.'" *Rock v. Enfants Riches Deprimes, LLC*, No. 17-CV-2618 (ALC), 2020 WL 468904, at *6 (S.D.N.Y. Jan. 29, 2020) (Carter, J.) (quoting *Farrar v. Hobby*, 506 U.S. 103, 114 (1992)). Nevertheless, the "[C]ourt must determine the 'lodestar' amount," known as the "'presumptively reasonable fee' in the Second Circuit," by multiplying "'a

reasonable hourly rate and the reasonable number of hours required by the case.'" *Rock*, 2020 WL 468904, at *5 (quoting *Millea v. Metro-N. R. Co.*, 658 F.3d 154, 166 (2d Cir. 2011)).

In calculating reasonable attorneys' fees, district courts typically multiply the hours reasonably expended by a reasonable hourly rate for attorneys in the district in which the court sits, to determine the "presumptively reasonable fee." *See McDaniel v. County of Schenectady*, 595 F.3d 411, 417 (2d Cir. 2010); *Simmons v. N.Y. City Transit Auth.*, 575 F.3d 170, 174 (2d Cir. 2009); *Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cnty. of Albany & Albany Cnty. Bd. of Elections*, 522 F.3d 182, 190 (2d Cir. 2008); *see also Hensley v. Eckerhart*, 461 U.S. 424, 433, 103 S. Ct. 1933, 76 L. Ed. 2d 40 (1983). "The reasonable hourly rate is the rate a paying client would be willing to pay," bearing in mind that "a reasonable, paying client wishes to spend the minimum necessary to litigate the case effectively." *Arbor Hill*, 522 F.3d at 190.

In setting the "reasonable hourly rate," the court should consider the "case specific variables" that the Second Circuit and other courts have "identified as relevant to the reasonableness of attorney's fees." *Id*. Those variables include the time and labor required to litigate the case, the novelty and difficulty of the issues and level of skill necessary to address them, the attorneys' customary hourly rates and their experience, reputation and ability, and the nature and length of the professional relationship with the client.

"In calculating the lodestar amount, the rates used generally' are the market rates prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." *Gierlinger v. Gleason*, 160 F.3d 858, 882 (2d Cir. 1998). "Courts 'should generally use 'the hourly rates employed in the district in which the reviewing court sits' in calculating the presumptively reasonable fee." *Simmons v. NY City Transit Auth.*, 575 F.3d 170, 174 (2d Cir. 2009). "The district court must also 'bear in mind all of the case-specific variables that [the Second

Circuit] and other courts have identified as relevant to the reasonableness of attorney's fees in setting a reasonable hourly rate." *Smart v. City of V.Y.*, No. 15-CV-1405 (RRM) (PK), 2017 U.S. Dist. LEXIS 24602, at *5 (E.D.N.Y. Feb. 17, 2017) (citing *Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cty. of Albany*, 522 F.3d 182, 190 (2d Cir. 2008)).

## REVIEW OF DEFENDANTS' PROFFERED EVIDENCE AND ARGUMENT IN SUPPORT OF THE CLAIM FOR FEES

Defendants' present little actual evidence in support of its claim for fees – which is nearly $350,000, and that evidence is insufficient, such as it is. In fact, Exhibit 1 would appear to be the only exhibit actually materially relevant to the Defendants Counsel's work on this case. As the only directly relevant exhibit, it is insufficient to support the Defendants' claim, because:

1) There is no authentication of the attorney time entries, rendering them unsupported hearsay with no reliable evidence to support the truth of the matter asserted;

2) This exhibit fails to support the amount claimed by Defendants' Counsel as there is no way to determine from these exhibits what hours were actually billed, if any, to the client;

3) This exhibit alone is also insufficient to support the Defendants claim as there is no evidence that the Defendant has paid this amount or any portion thereof;

4) Nearly one-third of the entries in Defendants' Exhibit 1 are so redacted as to be virtually meaningless as an exhibit for any purpose;

5) Of those entries that are not redacted, at least half have descriptions so vague that they cannot support the time attributed to them, and any reasonable client paying such a bill would dispute such a vague entry;

6) A review of this exhibit reveals that the Defendants had 4 lawyers, working on this one-issue case -- and that one issue is one which Defendants Counsel has previously

claimed, and claims again in its current motion papers was legally frivolous. This begs the question why so many people were needed to work on the case for so many hours -- other than to artificially inflate their legal bills, and;

7) These bills are also unrelaible due to excessive block billing and over billing, two practices that go against legal billing best practices, and antagonize the reasonable client, but are everywhere in the Defendant Counsel's bills.

Other than purely conclusory statements, the Defendants' Counsel's only evidence presented which purport to show that its hourly rates are reasonable are a number of bankruptcy applications filed by various law firms (with astronomical attorney hourly rates for associates and partners). This proffered evidence is not applicable, nor is it relevant, to the instant matter. Practice in bankruptcy court is a much more difficult, specialized and heavily detailed practice than the instant matter, and there are fewer practitioners who specialize in Bankruptcy than there are civil litigators who might practice in District Court. And with regard to these massive bankruptcy matters the Defendants' Counsel handles, there is no competitive market in legal fees, and as such they have a near monopoly, with the handful of other large firms for large corporate bankruptcies. Defendants' Counsel surely knows this to be true, which is why they presented their bankruptcy rates as their supporting evidence. Without a doubt, those cases were vastly different, and vastly more complicated, than the instant case.

The Defendants, of course, may choose whomever they wish to represent them, but that does not make Defendant's Counsel's hourly rates "reasonable."  And further, even if Defendant Shan is eager to pay such high bills, this does not, *ipso facto,* render the billing rate, hours or billing methods "reasonable."

Pursuant to this Honorable Court's order, and indeed controlling law on the subject, calls for any award to be based on a "reasonable attorney's fee", it would be an outright abuse of discretion, a distortion of justice, and an outright violation of controlling law, to rely on the Defendants' bankruptcy case rates to provide any guidance to calculate a "reasonable fee" in this matter.

As this Honorable Court clearly knows, the presumptively reasonable fee is "<u>the rate a paying client would be willing to pay</u>," <u>bearing in mind "that a</u> <u>be reasonable, paying client wishes to spend the **minimum necessary** to litigate the case effectively</u>." *Arbor Hill*, 522 F.3d at 190. A "reasonable hourly rate," in turn, is "the rate a paying client would be willing to pay," taking into account, "among others," (i) "the time and labor required," (ii) "the amount involved in the case and the results obtained," and (iii) "the experience, reputation, and ability of the attorneys." <u>Arbor Hill</u>, 522 F.3d at 190, 187 n. 3.

The extravagance of the billing firms like these render for bankruptcy work has attracted widespread attention – highlighting how irrelevant a metric these cases are for estimating reasonableness in the matter at bar. In a July 2022 news article, the extravagant fee structure for bankruptcy work was examined. <u>See</u> "As Billing Rates Skyrocket, Historic Fee Leaders Find Company at $2000 Per Hour" by The American Lawyer, July 28, 2022, ALM Media Properties, LLC. (Copy attached as "Exhibit A").

> "In the past few decades, four law firms—Weil, Gotshal & Manges; Kirkland & Ellis; Skadden, Arps, Slate, Meagher & Flom; and <u>Latham & Watkins</u>—have represented close to one-third of large public companies in Chapter 11 bankruptcy proceedings. For their services, the firms have <u>traditionally charged higher rates than other large firms</u> with less extensive bankruptcy practices. But their fee dominance may be beginning to wane."

A law professor, Lynn LoPucki, was quoted in the article, saying that the incentives of bankruptcy lawyers and judges facilitate frequent and aggressive rate hikes, in that "there's no market. These

are debtors' attorneys fees being paid with other people's money, so it's better to transmit a symbol that we are really good because we charge $2,000 an hour." Id at 2. But unlike the highest of high-end bankruptcy filings, there is a much more reasonable and competitive market for the handling of cases such as the instant case – and therefore should be serviced at a reasonable rate, being in essence a one-issue civil litigation dispute in District Court. <u>The instant matter was a standard civil litigation matter, based on one allegation</u> -- nothing about it required complex bankruptcy specialization, either to file the motion to dismiss, or the motion for Rule 11 sanctions. Therefore, the rate Defendants Counsel claims is completely out of touch from what would be reasonable in this case. Defendants' Counsel claims total legal fees of $342,819.22. They also claim an averaged hourly rate of $1,207.46. This averages out to 283.9 hours.

It would be more appropriate to calculate, as overwhelming case law suggests, a reasonable rate by the number of hours expended. We posit that the reasonable rate for the defense of the case should be $434.00 per hour, which for the same number of hours would result in a total of $123,212.60. (283.9 x 434= 123,212.60). The average lawyer hourly rate in the NYC area for 2023 is $434.00. It was previously reported that the average lawyer hourly rate in New York in 2020 was 357 per hour, with an anticipated yearly increate of +3 annually. *See* "Attorneys At Work, Hourly Rates By State," by Susan Kostal, Clio Legal Trends Report, 2021. (See "Exhibit B"). $357 per hour in 2020, with a yearly increase of 3% compounded over three years, comes to $434 in 2023.

Moreover, how can any firm justify the extravagant amount nearing $350,000 being claimed when the entirety of their handling consisted or two motions 1) a motion to dismiss, and; 2) a motion for sanctions, and a number of letter motions.

### IN SECTION II, DEFENDANTS COUNSEL -- SO EAGER TO SATIATE THEIR CLIENT'S DESIRE TO INFLICT AS MUCH HARM ON THE PLAINTIFFS AND COUNSEL AS POSSIBLE -- HAVE THEMSELVES CROSSED THE RULE 11 LINE

In Section "II" of the Defendants' Memorandum (pp.12-14), the Defendants argue that a "reasonable" sanction is not enough. In their eagerness, this entire section of the Defendants memorandum is designed to mislead the Court

FRCP 11 (b)(3) provides "(b) Representations to the Court. By presenting to the court a pleading, written motion, or other paper—whether by signing, filing, submitting, or later advocating it—an attorney or unrepresented party certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances:… (3) the factual contentions have evidentiary support."

Defendants cite *On Time Aviation Inc., v. Bombardier Cap., Inc.*, 354 F. App'x 448 (2d Cir. 2009) for the proposition that the Court can award higher than "reasonable" fees. (Defendants' Memo at p. 12). Nowhere in the cited opinion does it provide that "courts have discretion to award higher fees, reasonable or not, as a deterrent." In this way the Defendants have made a factual contention that is unsupported by the evidence (the cited case). To entertain this argument by the Defendants would surely be unjust, illegal and not in keeping with the intent of Rule 11.

Defendants similarly cite *Ceglia v. Zuckerberg*, 2012 WL 503810 At 6-7 for their argument that the district court can award higher fees. In this case the sanction was rendered in connection with a discovery dispute, and therefore the amount in question was limited to that portion of Counsel's work committed to the discovery in question – not for the entire case.

Now brings us to the empty arguments on page 13 of the motion , and more completely untrue portions of the Motion. Defendants refer vaguely to "the bankruptcy court" without citing a case, a docket number, or even identifying the court. Assuming the

reference is to the Kwok bankruptcy in the Federal Bankruptcy Court for the District of Connecticut, Docket No. 22-50073, then by no means did the bankruptcy court issue a TRO on November 22, 2022.

The argument regarding inclusion of "the addresses" in the First Amended Complaint falls flat as this issue was addressed, and dealt with, contemporaneously. Now Counsel wants to trott out that event as if it proves something. This issue was dealt with a year ago.

The third and fifth bullet points talk about NFSC, without explanation as to what or who it is. We know for sure that NFSC is not a party to this case, and therefore it is unjust to attribute any acts Defendants attribute to NFSC to these Plaintiffs and/or Counsel. Sanctions here will have no effect on NFSC.

## CASE LAW ON AWARDING

Further, it is highly likely that an award here, and particularly at the amount sought here by the Defendants' Counsel, would have an absolute chilling effect on any creative advocacy, which is explicitly counter to what Rule 11 should be about. Rule 11 is explicitly designed to avoid chilling creative advocacy. This is especially true in unsettled areas. *Kravetz v. Park La Brea Assocs.*, 1988 U.S. App. LEXIS 21472, at *5–*6 (9th Cir. Nov. 14, 1988) ("creativity in legal thinking is to be encouraged, especially in unsettled areas of the law"). Creative advocacy is also allowed when the law is settled. "Even if the law was settled against the defendant, however, that is not dispositive. Then, a court should ask whether the defendant's claim at the very least was based on an objectively good faith argument for the extension, modification, or reversal of existing law." *FTC v. AbbVie Inc.*, 976 F.3d 327, 360 (3d Cir. 2020); *Eldridge v. Gordon Brothers Grp., LLC*, 863 F.3d 66, 88 (1st Cir. 2017) ("it is not enough that the filer's claim lacked merit—it must be so plainly unmeritorious as to warrant the imposition of sanctions").

We believe that this Honorable Court should consider Plaintiffs' allegations in the light of completely acceptable circumstantial evidence, and that the Plaintiffs' reliance on circumstantial evidence was reasonable. A belief can be reasonable if supported by circumstantial or other inferential facts. *Lucas v. Duncan*, 574 F.3d 772, 778 (D.C. Cir. 2009) (reversing sanctions order requiring direct evidence because "[i]f an attorney has evidence that a man 'walked into a room with a wet umbrella' at a certain time, the attorney does have 'evidentiary support' for the 'factual contention' that 'it was raining' at that time").

In many cases, certain necessary evidence will be in a defendant's exclusive possession. As a general matter, sanctions will not lie in a situation where evidence to disprove allegations is within the defendant's possession rather than the plaintiff's. *Hadges v. Yonkers Racing Corp.*, 48 F.3d 1320, 1330 (2d Cir. 1995).

Additionally, the Plaintiffs request that this Honorable Court consider the fact that there still exists no case law issued from the 2nd Circuit or the US Supreme Court on the central topic of the case. Case law tells us that courts will consider whether the relevant area of law is well-established, and the more unsettled the law, the more leeway the courts will allow for creative advocacy. *Murray Hill Publ'ns, Inc. v. ABC Commc'ns, Inc.*, 264 F.3d 622, 640 (6th Cir. 2001) (Because we believe the plaintiffs presented one or more colorable, albeit meritless, claims to the district court, we reverse the award of attorney's fees); *S.A. Auto Lube, Inc. v. Jiffy Lube Int'l, Inc.*, 842 F.2d 946, 950 (7th Cir. 1988) (affirming denial of sanctions in light of attorney's "plausible argument on a relatively complex and unsettled issue of law"). Even if there had been binding precedent, whether at the Supreme Court or lower level, case law still provides that it can be challenged directly (when an attorney makes a non-frivolous argument that it was wrongly decided). Thus, "that a civil rights litigant pressed a legal position which courts had previously

rejected was not thought to constitute a species of sanctionable conduct. If it had been, the parties and counsel who in the early 1950s brought the case of *Brown v. Board of Ed.*, 347 U.S. 483, 74 S. Ct. 686, 98 L. Ed. 873 (1954), might have been thought by some district court to have engaged in sanctionable conduct for pursuing their claims in the face of the contrary precedent of *Plessy v. Ferguson*, 163 U.S. 537, 16 S. Ct. 1138, 41 L. Ed. 256 (1896)." *Blue v. U.S. Dep't of Army*, 914 F.2d 525, 534 (4th Cir. 1990).

### THE PLAINTIFFS AND COUNSEL ARE INDIVIDUALS OF LIMITED MEANS, WHICH SHOULD BE TAKEN INTO CONSIDERATION WHEN DETERMINING AN AWARD

Defendants' Counsel is correct insofar as they acknowledge that the Plaintiffs' and Plaintiffs' Counsel <u>are all individuals of limited means</u>. Defendants present some unidentified third-party's internet post and present it for the truth of the matter asserted – classic hearsay and inadmissible for any purpose.

Even so, Defendants' argument regarding Mr. Zhang is, firstly, logically deficient. Let us assume that the factual statement about gifting of a Lamborghini to him is true. This does not make the recipient of the gift wealthy with "substantial assets." On the contrary, such a gift is a massive liability in terms of insurance, upkeep etc. If the situation were that Mr. Zhang had <u>given</u> someone a gift of a Lamborghini, then perhaps it could be surmised that he had financial means. Finally, upon information and belief, Mr. Zhang did not receive a Lamborghini as a gift from Mr. Kwok.

The fact is that the amount being demanded by the Defendants would be beyond ruinous to both the Plaintiffs and Plaintiffs' Counsel, and would likely only result in compelling some if not all -- both the Plaintiffs and Counsel -- to seek bankruptcy protection. As such, the harm would perhaps be insurmountable to some if not all of us.

Note also that these individual Plaintiffs were all people who escaped China, with little or nothing when they arrived. The Plaintiffs are, upon information and belief, all hard-working immigrants who escaped the persecution of the Chinese Communist Party. Moreover, both the undersigned counsel, and co-counsel, operate small practices, and do not have funds or resources that would cover such the amount claimed by the Defendants' Counsel. The undersigned has no financial resources or collateral that would make it possible to pay even a fraction of the amount claimed by Defendants Counsel. We request that Your Honor take into consideration the Plaintiffs' and Plaintiffs' Counsel collective inability to pay the outsized sum being claimed when rendering a decision.

Monetary sanctions must be reasonable as well as consistent with the purpose of Rule 11 -- to deter baseless filings and dilatory or abusive pretrial tactics. *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 393, 110 L. Ed. 2d 359,110 S. Ct. 2447 (1990). In determining the amount, the district court must strike a balance that furthers the purpose of the rule without chilling meritorious litigation. See id; *Murphy v. Cuomo*, 913 F. Supp. 671 (NDNY 1996). To this end, a court may consider not only the conduct itself, but also the offending party's ability to pay.

We thank Your Honor for your consideration.

Dated: Dec. 1, 2023

                                                  Counsel for the Plaintiffs

                                                 _____
                                                 Richard N. Freeth
                                                 Freeth & Associates, LLC
                                                 260 Madison Ave., 8th Floor
                                                 New York, NY 10016
                                                 (917)775-7082