# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

TAO AN, CHUNGANG GUAN, CUI QINGYUN,
HUIMIN LIN, BEILE LI, YANMING WANG,
TAO ZHENG, ZHENG HU, YUAN CAO, and
LINWAN FENG,

                Plaintiffs,

      v.

WEIJIAN SHAN and BO LEILEI SHAN,

                Defendants.

Case No. 1:22-CV-10060-ALC

**DEFENDANTS' REPLY MEMORANDUM OF LAW IN SUPPORT OF**
**THEIR APPLICATION FOR REASONABLE ATTORNEYS' FEES AND COSTS**

## TABLE OF CONTENTS

**Page**

INTRODUCTION ...................................................................................................... 1

I.      DEFENDANTS' FEES WERE REASONABLE AND ADEQUATELY
        SUPPORTED ................................................................................................... 2

        A.      Plaintiffs Ignore Or Misrepresent Evidence Showing That Jones Day's
                Rates Were Reasonable For The Relevant Market And Circumstances ............... 2

        B.      Plaintiffs Ignore Or Misrepresent Evidence That Shows The Hours Spent
                Defending This Action Were Reasonable ............................................................. 4

II.     PLAINTIFFS' OPPOSITION PROVIDES MORE PROOF THAT SEVERE
        SANCTIONS ARE NECESSARY TO DETER FURTHER ABUSE ............................ 5

III.    PLAINTIFFS' UNSUBSTANTIATED CLAIMS REGARDING THEIR
        LIMITED RESOURCES SHOULD NOT INFLUENCE THE SANCTIONS
        AWARD ............................................................................................................. 6

CONCLUSION .......................................................................................................... 7

## <u>TABLE OF AUTHORITIES</u>

**Page**

CASES

*Cruz v. Loc. Union No. 3 of Int'l Brd. Of Elec. Workers*,
    34 F.3d 1148 (2d Cir. 1994)...................................................................................4

*In re Stock Exchs. Options Trading Antitrust Litig.*,
    2006 WL 3498590, No. 99 CIV 0962 (RCC) (S.D.N.Y. Dec. 4, 2006)..................................2

*Lilly v. City of New York*,
    934 F.3d 222 (2d Cir. 2019)...................................................................................3

*Midamines SPRL Ltd. v. KBC Bank NV*,
    12-cv-8089 (RJS), 2016 WL 11359166 (S.D.N.Y. Mar. 31, 2016)..........................7

*On Time Aviation, Inc. v. Bombardier Cap., Inc.*,
    354 F. App'x 448 (2d Cir. 2009) .......................................................................5, 6

*Restivo v. Hessemann*,
    846 F.3d 547 (2d Cir. 2017)...................................................................................4

*United States ex rel. Carranza v. Guaranteed Rate, Inc.*,
    No. 117CV637MADDJS, 2021 WL 494696 (N.D.N.Y. Feb. 10, 2021)..................4

STATUTES

Foreign Agents Registration Act, 22 U.S.C. § 611–621.................................................1

OTHER AUTHORITIES

Fed. R. Civ. P 11........................................................................................................1, 5

## INTRODUCTION

The parties to this case are presently litigating a potential fee award to defendants because the conduct of plaintiffs and their counsel was outrageous even by the standards of Rule 11 jurisprudence.  They filed *four* frivolous FARA actions[1] – three in this district and one in the District of Maryland.[2]  All four were dismissed, at least in part, and *three* have resulted in Rule 11 sanctions.  All were filed as part of a broad, well-coordinated effort to harass and intimidate these defendants and others who were adverse to Ho Wan Kwok in bankruptcy and other proceedings.[3]

On September 25, 2023, the Court dismissed the action at bar, with prejudice, and sanctioned plaintiffs and their counsel, who not only "neglected to do the minimum inquiry required before bringing this suit," but also filed their "patently untenable" FARA claim "in bad faith" and "to harass Defendants."  ECF No. 45 ("Order") at 10, 11 (citation omitted).  The Court specifically found that plaintiffs and their counsel filed this case as a means of "targeting those with interests opposed to Kwok's with the aim of chilling what they perceive as advocacy against him."  *Id.* at 11 (citation omitted).

For this abuse, defendants applied for a substantial penalty – $342,819.22 in attorneys' fees and costs.  Defendants' Opening Brief shows that the award is reasonable and necessary to deter Plaintiffs and their counsel from further harassing the Shan family and abusing the courts.  Plaintiffs' Opposition Brief – which not only fails to present valid counter-arguments but also

---

[1] The Foreign Agents Registration Act, 22 U.S.C. § 611–621.

[2] *An v. Despins*, No. 22-cv-10062 (S.D.N.Y. 2023) [hereinafter *Despins* Dkt.]; *Gong v. Sarnoff*, No. 23-cv-00343 (S.D.N.Y. 2023) [hereinafter *Sarnoff* Dkt.]; *Wyatt v. Univ. of Maryland*, No. 23-cv-742 (D. Md. 2023).

[3] Kwok is currently under indictment in the Southern District of New York, facing charges stemming from an immense investment fraud scheme.  *See* Sealed Indictment, *United States v. Ho Wan Kwok*, No. 1:23-cr-118-AT (S.D.N.Y. Mar. 15, 2023) [hereinafter *Kwok* Crim Dkt.], Dkt. No. 1.  Trial in that matter is currently scheduled for April 2024.  *Kwok* Crim Dkt. 93 at 1.

manages to exacerbate the misconduct for which they were sanctioned in the first place – confirms both points.

## I.    DEFENDANTS' FEES WERE REASONABLE AND ADEQUATELY SUPPORTED

### A.    Plaintiffs Ignore Or Misrepresent Evidence Showing That Jones Day's Rates Were Reasonable For The Relevant Market And Circumstances

The rates defendants' counsel charged for contending with plaintiffs and their counsel's part in Kwok's extensive harassment campaign were reasonable. To argue otherwise, plaintiffs make the absurd claim that the "only evidence" defendants presented in support of the reasonableness of their rates was "a number of bankruptcy applications." Opp. at 5.[4]

Defendants discussed those fee applications in a single paragraph halfway through a five-page discussion devoted to "Jones Day's Rates." Opening Br. at 5-10. As that section argues, the "best evidence" of the market rate for an attorney's services is that attorney's "customary billing rate." *Id.* at 5 (quoting *In re Stock Exchs. Options Trading Antitrust Litig.*, 2006 WL 3498590, No. 99 CIV 0962 (RCC), at *9 (S.D.N.Y. Dec. 4, 2006)). And the next best evidence is the rates peer firms charged for the same services: because this fee application was filed after those submitted in related frivolous FARA suits brought by Richard Freeth and Yongbing Zhang in this district, Jones Day had the benefit of information on the rates those defense firms charged.

By either metric, the rates defendants' counsel charged here were not only reasonable, but even low. Here, rather than its standard rates, Jones Day charged discounted rates that were

---

[4] Plaintiffs argue that, relative to the case at bar, bankruptcy cases are more complex and accompanied by a less competitive market for counsel, so the rates appearing in fee applications filed in bankruptcy courts are "not applicable" or "relevant" here. Opp. at 5. But most of the bankruptcy applications defendants submitted as exhibits describe the law firm's general rates, rather than rates specific to bankruptcy proceedings. *See, e.g.*, Lelling Decl. (ECF No. 48-1) Ex. 13 at 2 (discussing upcoming adjustment in "L&W's standard billing rates"); Lelling Decl. Ex. 14 at 4 ("This rate structure is appropriate and the same as the rates that Simpson Thacher charges generally for restructuring, . . . as well as similar complex corporate, securities, and litigation matters whether in court or otherwise, regardless of whether a fee application is required."); Lelling Decl. Ex. 15 at 2 (listing Skadden's "standard fees" and explaining that such fees "for professional services are based on its guideline hourly rates"); Lelling Decl. Ex. 17 at 6 (referring to standard "hourly rates charged by White & Case in its U.S. offices").

materially lower than Davis Polk's in *An v. Despins*, and about the same as, or lower than,

O'Melveny's in *Gong v. Sarnoff*.  Lelling Decl. ¶¶ 11, 13.  Plaintiffs deal with this evidence –

probably the best evidence that could be adduced to support this kind of application – by ignoring

it.

Likewise, plaintiffs ignore the "case-specific variables," enumerated in defendants'

Opening Brief, that warranted retaining top-tier counsel.  Opening Br. at 3, 8-10 (quoting *Lilly v.*

*City of New York*, 934 F.3d 222, 228, 230 (2d Cir. 2019)).  Kwok's campaign of harassment and

intimidation, starting in roughly November 2022, alarmed the defendants and Kwok's other targets

– a group that includes not only PAG's Chairman, but also his *children*.  *See, e.g.*, ECF No. 32 at

11-12.  And plaintiffs filings threatened defendants' physical safety by broadcasting their precise

home addresses, and their personal and professional reputations though false and harassing

allegations.  *See* ECF No. 9 at 1.  Defendants urgently wanted – and could afford – topflight

counsel.

Mitigating those threats required defendants' counsel to work on an expedited basis,

including on two emergency motions to remove defendants' alleged addresses from the public

docket.  ECF Nos. 3, 9.  Representing defendants also presented real risks to the safety and

reputations of defendants' lawyers.  Kwok's followers, for example, harassed and picketed lawyers

at O'Melveny, Sarnoff Dkt. No. 72 at 11-14, 32, and publicly defamed undersigned counsel as an

agent of the Chinese Communist Party, ECF No. 34 ¶ 38.  Further, the unique circumstances of

this case also required counsel with expertise in U.S. bankruptcy proceedings, federal prosecution,

and defamation laws in various countries.

Disregarding all of this, Plaintiffs deem the case a "standard civil litigation matter," and

posit that a "reasonable rate . . . should be $434.00 per hour."  Opp. at 7.  Plaintiffs calculate this

rate based on an article titled "Solo and Small Firm Hourly Rates: Winners and Losers, by State and Practice Area,"[5] which describes 2020 rates for "*solos and small firm practitioners*." *Id.*; Opp. Ex. B at 1 (emphasis added). Of course, Jones Day is neither. *See* Lelling Decl. ¶¶ 5, 7 (describing Jones Day as having more than 2,400 lawyers worldwide). And plaintiffs do not explain why the Court should look to small firms to establish the market rate for "lawyers of . . . skill, experience, and reputation" "reasonably comparable" to those of the lawyers at a global law firm like Jones Day. *Restivo v. Hessemann*, 846 F.3d 547, 590 (2d Cir. 2017). Davis Polk's attorneys and rates in *An v. Despins*, and O'Melveny's in *Gong v. Sarnoff*, are far more apt benchmarks.

### B. Plaintiffs Ignore Or Misrepresent Evidence That Shows The Hours Spent Defending This Action Were Reasonable

Plaintiffs claim that the evidence backing the number of hours defendants' counsel worked on this matter is "insufficient," but cite no relevant legal authority. Opp. at 4-5. To substantiate attorney hours, fee applicants may submit "a typed listing of their hours from their computer records." *Cruz v. Loc. Union No. 3 of Int'l Brd. Of Elec. Workers*, 34 F.3d 1148, 1160 (2d Cir. 1994). For example, applicants may submit a records "specify[ing], for each attorney, the date, the hours expended, and the nature of the work done." *United States ex rel. Carranza v. Guaranteed Rate, Inc.*, No. 117CV637MADDJS, 2021 WL 494696, at *9 (N.D.N.Y. Feb. 10, 2021) (quoting *Marion S. Mishkin Law Office v. Lopalo*, 767 F.3d 144, 148 (2d Cir. 2014)). Defendants did just that, submitting a sworn declaration from their lead counsel Andrew Lelling that attached, and attested to the veracity of, spreadsheets showing "contemporaneous records" of the legal services Jones Day rendered and the fees it "*charged* while defending this matter." Lelling Decl. ¶¶ 2, 3 (emphasis added).

---

[5] Plaintiffs erroneously cite that article as "Attorneys at Work, Hourly Rates by State," omitting the "Solo and Small Firm" part. Opp. at 7.

Plaintiffs completely mischaracterize this evidence.  First, claiming that defendants' billing record exhibit lacks "authentication" and fails to disclose "what hours were actually billed," Opp. at 4, plaintiffs ignore Mr. Lelling's declaration, which does both.  Lelling Decl. ¶¶ 2, 3.  Second, plaintiffs incorrectly claim that defendants are seeking fees for a four-lawyer team, whereas the exhibit seeks fees for a team that, before August 2022, had three billers (one partner and two associates) and afterwards only two (one partner and one associate).[6]  Lelling Decl. Ex. 1 at 1-10 (three billers); *id.* at 10, 12-13 (two billers).  Third, plaintiffs misread the exhibit to drastically reduce the number of hours claimed, with the result that they calculate that defendants worked 283.9 hours, Opp. at 7,[7] even though the exhibit clearly lists entries amounting to 431.6 hours of attorney work, Lelling Decl. Ex. 1; *see also* Lelling Decl. ¶ 4.  Fourth, plaintiffs' counsel list several boilerplate critiques concerning "vague" billing entries, "block billing," and "over billing" that they lifted verbatim from their opposition to the fee application in *An v. Despins*.[8]  Opp. at 4-5.  They also fail to support those claims with any examples from, or citations to, the record here. *Id.*

## II.   PLAINTIFFS' OPPOSITION PROVIDES MORE PROOF THAT SEVERE SANCTIONS ARE NECESSARY TO DETER FURTHER ABUSE

"The purpose of a Rule 11 award is . . . the deterrence of baseless filings and the curbing of abuses."  *On Time Aviation, Inc. v. Bombardier Cap., Inc.*, 354 F. App'x 448, 452 (2d Cir. 2009) (citation and quotation marks omitted).  To fulfill this purpose, the Court should impose a penalty

---

[6] Four attorneys appear in the exhibit, but all of Mr. Wilson's hours occurred before February 1, 2023, and all of Mr. Lelling's occurred after, since Mr. Lelling replaced Mr. Wilson as lead counsel upon Mr. Wilson's departure from Jones Day.  *See* Lelling Decl. Ex. 1 at 11.

[7] Plaintiffs confuse the hourly rate Jones Day charged for partner work on this case in 2023 ($1,207.46) with the average hourly rate for all work on this case, and use that figure to miscalculate the total number of hours.  Opp. at 7.

[8] *Compare, e.g.*, Opp. at 4 ("Of those entries that are not redacted, at least half have descriptions so vague that they cannot support the time attributed to them, and any reasonable client paying such a bill would dispute such a vague entry . . . ."), *with Despins* Dkt. No 34 at 3 (identical).

severe enough to deter misconduct that plaintiffs continue to commit despite knowing that it warrants sanctions.

Plaintiffs have shown that they remain, to this day, undeterred.  They devoted several pages of their Opposition to relitigating the merits and reasonableness of their FARA claim, even though this Court – the third federal court to do so – has already held the claim "objectively frivolous" and "patently untenable for numerous reasons," and sanctioned plaintiffs not only for bringing it, but also for doing so to "harass Defendants."[9]

Furthermore, plaintiffs argue that parts of defendants' Opening Brief were "completely untrue" and "designed to mislead the Court" by making demonstrably false claims about the facts and case law the brief cites.  Opp. at 8-9.  First, plaintiffs pretend that defendants simply made up a TRO that prevented certain people, including plaintiff Beile Li, from publishing defendants' home addresses, "without citing a case, a docket number, or even identifying the court."  *Id.*  But the Opening Brief includes a cite – "ECF No. 3-2 at 6."  Opening Br. at 13.  More to the point, the TRO has been on this matter's docket since November 29, 2022.  Second, plaintiffs appear to claim that defendants intentionally misrepresented the case *On Time Aviation Inc. v. Bombardier Cap., Inc.*, Opp. at 8, but this is false, as demonstrated by simply comparing the decision to defendants' brief, *see* 354 F. App'x 448 (2d Cir. 2009); Opening Br. at 12.

## III.   PLAINTIFFS' UNSUBSTANTIATED CLAIMS REGARDING THEIR LIMITED RESOURCES SHOULD NOT INFLUENCE THE SANCTIONS AWARD

Plaintiffs assert that the award defendants seek "would be beyond ruinous to both the Plaintiffs and Plaintiffs' Counsel."  Opp. at 11.  But this purportedly catastrophic risk did not

---

[9] ECF No. 45 at 10, 11 (citations omitted); *Despins* Dkt. No. 29 at 9 ("A reasonable inquiry would have revealed that Plaintiffs' FARA claim was patently untenable for numerous reasons . . . ."); *id.* at 13 ("[T]his lawsuit is just another part of a campaign of misbehavior designed to vex Defendants . . . ."); *Sarnoff* Dkt. No. 72 at 23 ("Plaintiff's FARA claim here lacked any chance of success and was objectively frivolous."); *id.* at 30 ("[T]he Complaint was filed . . . to harass . . . .").

motivate Plaintiffs to submit *evidence* – or even a declaration – supporting their claim of limited means, even though the financial information is their own and the Court entered its sanctions order months ago.  ECF No. 45 (dated on September 25, 2023).  Plaintiffs do not even address the hard evidence that Mr. Zhang apparently had sufficient means to serve as a surety in satisfaction of Yvette Wang's *$5,000,000* bail conditions.  Opening Br. at 14 (citing Def. Yanping Wang's Mem. of Law at 5, *United States v. Wang*, No. 1:23-mj-02007-UA (S.D.N.Y.), ECF No. 9.).[10]  Instead, plaintiffs base their argument on a few general, unsworn statements, which make no attempt to distinguish among the finances of the ten plaintiffs.[11]  Accordingly, the Court should reject plaintiffs' argument as unjustifiably unsubstantiated.  *See Midamines SPRL Ltd. v. KBC Bank NV*, 12-cv-8089 (RJS), 2016 WL 11359166, at *2 (S.D.N.Y. Mar. 31, 2016) (declining to reduce a fee award where the sanctioned party "never provided a financial declaration or any other documents reflecting his asserted lack of income").[12]

## CONCLUSION

For the foregoing reasons, defendants respectfully ask the Court to award Defendants $342,819.22 in attorneys' fees and costs associated with this action and this fee application.

---

[10] Wang is an alleged co-conspirator of Kwok and is also charged in the Southern District of New York.

[11] *E.g.*, Opp. at 11 ("[*U*]pon information and belief, [plaintiffs' counsel,] Mr. Zhang[,] did not receive a Lamborghini as a gift from Mr. Kwok." (emphasis added)); *id.* at 12 ("Plaintiffs were all people who escaped China, with little or nothing when they arrived.").

[12] Defendants respectfully submit that, should the Court entertain plaintiffs' argument, discovery would be appropriate – both to determine the sanctioned parties' finances and the funding behind this litigation, which the Court has already determined was filed to target a self-proclaimed billionaire's adversaries.  *See* ECF No. 45 at 2, 11.

Dated: December 8, 2023

Respectfully submitted,

*/s/ Andrew Lelling*

Andrew E. Lelling
JONES DAY
100 High Street
Boston, MA 02110
Telephone: (617) 449-6856
Email:  alelling@jonesday.com

*Attorney for Defendants*
*Weijian Shan and Bo Shan*